## 10068

### PHILLIPS v. PIEDMONT & N. RY. CO.

#### (96 S. E. 960.)

1. Railroads—Injuries to Person on Track—Negligence—Evidence.—In action for death of a tenant's son killed by defendant's interurban car while going from a cow lot on premises of landlord where he had the right to be, to his father's dwelling house on the other side of defendant's track, *held,* defendant's motion for directed verdict was properly refused.

2. Railroads — "Trespasser" — "Licensee." — Where landlord had the right to use of the land on either side of defendant's interurban line, the tenant's son, in going from a cow lot on the landlord's premises to his father's dwelling across defendant's tracks, was not a "trespasser" or a "licensee."

3. Appeal and Error—Erroneous Instruction—Reversible Error.—In action for wrongful death, that the Court spoke of deceased as that "poor boy" was not reversible error.

Before Spain, J., Greenville, Fall term, 1917.　Affirmed.

Action by J. B. Phillips, as administrator, against the Piedmont & Northern Railway Company. Judgment for plaintiff, and defendant appeals.

*Messrs. Haynsworth & Haynsworth,* for appellant, cite: *As to signals:* 92 S. C. 291.　*As to lookout:* 94 S. C. 143. *As to the jury not awarding punitive damages:* 69 S. C. 110, at 115-6; 85 S. C. 467; 105 S. C. 480.　*As to error in charging the jury:* "Where the public has constantly used a pathway along a railroad track, the railroad company owes the duty to be on the lookout for them and not injure them. If such persons are not trespassers but licensees in such cases it is the duty of the railroad company to expect persons near the track and keep a lookout for them, and it is the duty of the railroad company to give warning of the approach of its trains to such places and so control the speed of its trains so as to observe due regard for those who might be on the track." 90 S. C. 331; 78 S. C. 103; 70 S. C. 79; 61 S. C. 560; 65 S. C. 417; 70 S. C. 192; 33 S. C. 139; 97 S. C. 428-9; 72 S. C. 394; 63 S. C. 494; 92 S. C. 490; 76 S. C.

62; 65 S. C. 482; 55 S. C. 179; 16 A. & E. 465; Constitution (1895), art. V, sec. 26; 68 S. C. 161-2. *As to whether or not railroad acquiesces in the use of its track being a question of fact for the jury:* 90 S. C. 331; 76 S. C. 103.

*Mr. J. Robert Martin,* for respondent, submits: *That appellant cannot complain because the jury only awarded actual damages:* 103 S. C. 321; 96 S. C. 460. *The facts in this case show negligence, on the part of appellant, as the proximate cause of the injury and death of respondent's intestate, and the presiding Judge correctly submitted them to the jury:* 76 S. C. 63; 16 A. & E. Enc. of Law 465, *et seq.;* 55 S. C. 179; 32 S. E. 983; 66 S. C. 482; 103 S. C. 327. *As to portion of Judge's charge as to acquiescence by railroad in use of its tracks:* 95 S. C. 314; 61 S. C. 356; 39 S. E. 758; 68 S. C. 483; 47 S. E. 713; 67 S. C. 510; 46 S. E. 336; 93 S. C. 543; 73 S. C. 350; 90 S. C. 335; 103 S. C. 321; 61 S. C. 560; 78 S. C. 518. *Independently of statute, it is the duty of those in charge of a train to give notice of its approach, at all points of known or reasonably apprehended danger:* 65 S. C. 218; 8 Enc. of Law 412; 10 Rich. 227; 57 S. C. 205; 35 S. E. R. 513; 52 S. C. 323; 95 S. E. 905; 58 S. C. 70; 37 S. E. 226; 72 S. C. 394. *What signal, if any, shall be given at other places than at regular crossings is for jury:* 104 S. C. 115. *As to licensees:* 90 S. C. 335; 86 S. C. 111; 67 S. C. 508; 68 S. C. 487; 61 S. C. 560; 103 S. C. 327. *The fact, that the presiding Judge, in his charge, referred to deceased as this "poor boy" was not a charge upon the facts:* 73 S. C. 233; 68 S. C. 392; 63 S. C. 379. *That the verdict was only for actual damages did not establish that there was contributory neglicense on the part of the deceased:* 101 S. C. 395; 93 S. C. 341; 96 S. C. 456-460; 103 S. C. 327.

*Messrs. Martin & Henry,* also for respondent, cite: *As to thickly settled community:* 90 S. C. 264; 95 S. C. 314; 103 S. C. 325. *Travel acquiesced in:* 61 S. C. 560; 68 S. C.

487; 70 S. C. 193; 90 S. C. 266; 103 S. C. 324. *As to lookout:* 103 S. C. 323-4; 97 S. C. 66; 90 S. C. 265; 93 S. C. 25; 61 S. C. 560; 68 S. C. 488; 70 S. C. 193; 104 S. C. 110; 95 S. C. 314; 61 S. C. 566; 39 S. E. 758; 68 S. C. 483; 47 S. E. 713; 67 S. C. 510; 46 S. E. 336; 93 S. C. 543; 73 S. E. 356; 93 S. C. 17. *As to warning:* 82 S. C. 327; 85 S. C. 25; 90 S. C. 266; 70 S. C. 193; 68 S. C. 488; 65 S. C. 218; 61 S. C. 560; 102 S. C. 82; 104 S. C. 115. *As to speed of train:* 63 S. C. 516; 74 S. C. 135; 90 S. C. 264-5.

August 5, 1918.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action for death by the wrongful act. The American Spinning Company owns a tract of land between Greenville and Spartanburg. It has houses for its employees. Instead of allowing each family to keep a cow at their dwelling, the company has an inclosure some distance away in which there is located a building used as a cow house. After the dwellings and the inclosure for the cows had been located, the defendant built its road, locating its line, between the inclosure for the cows and the dwellings of the mill village and near the cow lot. The plaintiff and his wife and family occupied one of the houses in the mill village and kept a cow in the cow lot. Just about dark, on the 8th day of February, Mrs. Isa Phillips, the wife of the plaintiff, went from her house to the cow lot to milk their cow, and took with her her son, Woods K. Phillips, to assist her with the milking. After the milking was done, Mrs. Phillips returned to her home, leaving her son, a lad of between 12 and 13 years of age, at the lot with another boy, Frank Dempsey. Dempsey said that he was sitting on the fence and Woods was in the cow barn; that he called to Woods (though he could not say that Woods heard him), that the interurban was coming; that Woods said, "I am going," but he advised

Woods not to go; that Woods started, and the next thing he knew of Woods was that he saw him run on the track in front of the car and saw the car hit him. Woods was killed instantly. There was evidence that the car was lighted, but that the current had been shut off and made little noise, and that no signals were given, and that the car was running at high speed. This action was brought for negligence and wilfulness. The jury found a verdict for negligence only. From the judgment entered on the verdict, this appeal is taken. There are seven exceptions.

1. The appellant groups exceptions 1, 2 and 7. These exceptions complain of error in the refusal of defendant's motion for a nonsuit and a directed verdict. It is enough to say that these exceptions are overruled, because there was evidence enough to carry the case to the jury.

2. The third and fourth exceptions complain of error, in that his Honor, the presiding Judge, charged the jury that it is the duty of the defendant to give warning of the approach of its trains.

The defendant operates an electric railroad, and the statutory signals do not apply. In *Tyler v. Railway Co.,* 104 S. C. 115, 88 S. E. 544, it is said:

"What signals, *if any* (italics added), shall be given at other places (than regular crossing) is for the jury."

What signals, *if any,* was a question for the jury, and in so charging his Honor invaded the province of the jury. See *Smith v. Railway,* 90 S. C. 462, 73 S. E. 867.

This exception should be sustained, in my judgment.

3. Exception 5: "His Honor erred in charging the jury as follows: 'Now, Mr. Foreman and gentlemen, where persons are in the habit and custom of using a railway track, walking up the track or crossing it, and do so with an expressed or implied invitation on the part of the railway, or they do so with the knowledge of the railroad without any protest on their part, then they are

what the law terms licensees, and the railway must exercise toward them ordinary care. If it fails to exercise towards them that degree of care, then the railway company is guilty of negligence.'

"It is submitted that this charge was erroneous in two particulars: (1) It is an incorrect statement of the law. The use by the public does not fix the status of the users, but is merely one of the facts which with others may show a license. (2) The Court thereby invaded the province of the jury and charged upon the facts in violation of the Constitution."

This charge was too favorable to the appellant. No other conclusion can be drawn from the testimony but that the deceased was neither a trespasser nor a licensee. Certainly no authority is necessary to show that, when a railroad crosses a tract of land and divides it in two, the railroad company cannot prevent the owner from crossing from one part to the other, provided that in crossing the owner does not obstruct the use· for railroad purposes. That which is true as to the owner is also true as to his tenants, agents and servants. The deceased was going from the cow lot where he had been in his father's service, to his father's dwelling house, and at all times on the land of the landlord, and making use of the land on either side that was contemplated by the parties. Woods, therefore, had the right to cross, and he was not crossing as a licensee (by permission), nor as a trespasser.

This exception cannot be sustained.

4. The last exception complains that his Honor spoke of the deceased as that "poor boy." This is not a reversible error. The term "poor· fellow" is frequently used and applied to those who come to an untimely death, as a result of their own misused lives.

The judgment is affirmed by a majority of the Court.

MR. JUSTICE WATTS, *dissenting in part.* I concur in so much of the opinion of Mr. Justice Fraser that overrules the exceptions, but cannot concur in that part of his opinion that sustains the third and fourth exceptions of the appellant. These exceptions should be overruled.

This Court has said, in *Hughes v. S. C. L. P. Ry. Co.,* 107 S. C. 502, 93 S. E. 187:

"The motorman of a street car must be more diligent and careful for the safety of pedestrians than a locomotive engineer. * * * The locomotive has exclusive right of way, and is traveling on its own property, where, as a rule, pedestrians have no right to be, unless crossing a track, or by recognized customs are using a track with the implied permission of the company, while the street railways are using the streets, to which the public have the same right."